B. F. LAIRD *v.* ESTHER A. LAIRD.

[Abstract Kentucky Law Reporter, Vol. 6—584.]

**Fraud in Settlement Sheet.**

> The relation of trust and confidence between a brother and sister, where the brother has had charge of her property and been collecting her rents, is such that if the sister signs a settlement sheet purporting to be a full and complete settlement between them, she will still not be precluded from the right to compel her brother to account for all money coming to his hands belonging to her. Such a final settlement is not binding upon her when she shows that it was not understood by her.

APPEAL FROM KENTON CIRCUIT COURT.

February 7, 1884. ·

OPINION BY JUDGE LEWIS:

In 1874 by a division of the estate of Samuel B. Laird, between his children and devisees, appellant came into possession as owner of real property in the city of Covington consisting of detached lots, which appellant who is her brother, seemed to have managed as her agent, collecting rents, paying taxes and from time to time making sales of different parcels and collecting the proceeds.

This action was instituted by her in July, 1879, to compel him to settle his accounts and to pay to her the balance alleged to be due on account of rents and proceeds of sales collected by him and

money received in mortgage of her property of which he got the benefit.

It is stated in her petition that he had hitherto refused to render to her a statement of his transactions as her agent, and to settle with and pay her the amount which he owed her. She files as an exhibit a paper dated June 25, 1879 and signed in duplicate by herself and appellant, which purports to be a written agreement and acknowledgment by them that a full and satisfactory settlement had been made between them of all claims against each other, which paper she states she is informed appellant relies on and claims to be a full discharge of his indebtedness to her. But she alleges that she signed the paper by appellant's solicitation being influenced and deceived by his representations that it related to a different matter and in ignorance of its true nature and legal effect, which she afterwards found out; that it is without consideration, was fraudulently obtained and is void.

As a defence to the action appellant, admitting the collection of a portion of the sums stated in the petition, alleges that he has applied the amount received by him in the manner directed by her and pursuant to the authority she gave him, and has fully accounted to her for all money that came to his hands belonging to her. He says that he at different dates, which he gives, rendered to her his various accounts and in each case produced vouchers which are now in her possession.

He denies that the paper referred to and dated June 25, 1879, was procured by fraud or misrepresentation. But says that on the 20th of June, 1879 having paid over to her all the money collected for her by him, he had with her a final settlement taking her receipt in full, which he files with his answer, and purports to be a receipt for two dollars in full and satisfactory settlement of all claims against him.

He states that after the distribution of his father's estate he was called on by his mother and appellee to assist them in the management of their estate and general business affairs and that he did assist them, acting as their general book-keeper of all transactions for and between each of them and himself and at such times as they desired would render them an account of their affairs of which they accepted as satisfactory. He files and makes part of his answer five different schedules alleged to be full statements of all transactions between each of them and himself.

In her reply appellee denies appellant at the times stated by him or at any time, rendered to her a statement of his transactions or furnished to her vouchers. She also denies that they had a settlement on the 20th of June 1879, or at any other time, and also denies that she signed the receipt of that date filed by appellant.

In October, 1880, the action was referred to the Master Commissioner, to ascertain and report 1. all the money which appellant received belonging to appellee. 2. the payments made directly to appellee. 3. The payments made to others for her and the grounds upon which he made them. The report of the Master Commissioner shows the amounts of money belonging to appellee received by appellant, the persons to whom payments were made, and a balance of $4,840 due by him. But the purposes for which the payments were made do not in every case appear.

Numerous exceptions were filed to the report, but without passing upon them in detail, the court in the final judgment rendered, set out the amounts with which appellant is chargeable, and the dates and amounts of payments allowed him as credits, but does not specify the persons to whom, or on what account the payments were made. The judgment, however, is in favor of appellee for the sum of $3,557.85. Of that judgment both parties complain.

The first question to consider is whether the parties did, as alleged by appellant and denied by appellee, make on the 20th of June, 1879, a full and final settlement; and if they did, the next inquiry is whether appellee is bound by it.

As evidence that such settlement was made appellant produces a receipt purporting to have been signed by appellee which is as follows: "Received June 20th., 1879 of B. F. Laird two dollars in full and satisfactory settlement of all claims against him by law or equity to date".

It is proper to consider in this connection also another receipt dated June 25, 1879, signed by the parties in duplicate, which appellee filed with her petition and alleged appellant procured her to sign by misrepresentation, and was signed by her without understanding its import. The first mentioned receipt can not be regarded and manifestly was not regarded by appellee when she signed it, if she did do so, as evidence of a full and satisfactory settlement of all the various transactions between them during a period of four or five years, involving the selling, mortgaging and renting her real estate, and payments of money by him as he now claims on ac-

count of taxes, improvements, store bills, and other things. It is clearly shown that the receipt was given, if at all, upon the settlement of a small account for repairs of her property which he claimed to have paid for her, amounting to $41.15, which, when credited by cash paid by her, left in her favor a small balance of $2.00 which he paid, taking her receipt therefor stating that to be in full and satisfactory settlement of all claims against him by law or equity to date.

As evidence that appellant did not himself regard the first receipt to be what it purports to be, he prepared and presented to her to sign, and signed himself the paper dated June 25, 1879, only five days after the first, in which it is stated that appellant had made a full and satisfactory settlement with him of every claim against each other in law or equity.

In reference to the last receipt appellee states she did not understand it when appellant read it to her as being evidence of a settlement between them, and she is corroborated by the mother of both of them who attested the paper as a witness, and states it was not understood to be a receipt in full.

But even if it had been so understood by appellee, we think in view of the situation of appellee at the time and the relation existing between her and appellant, she ought not to be precluded from the right to compel him to account for all the money that has come into his hands as her agent from sales and rents of her property; for she evidently implicitly confided in both his judgment and fidelity, and he not only made sales the proceeds of which as well as rents passed through his hands, but in at least one instance, she was induced to mortgage her property to raise money of which he got the benefit.

Appellee is an unmarried sister of appellant and since the death of their father has been residing with her mother, as has others of the children from time to time, including appellant.

Both appellee and her mother, Cordelia Laird, have since the death of the husband and father had to depend upon their real property for support, and both from about the year 1876 to the time this suit was commenced, entrusted the management of their business to a considerable extent to the appellant. In fact he contends that he has been not only their agent, but book-keeper, keeping account of transactions between them as well as between himself and each of them.

Not only therefore should his accounts be subjected to strict scrutiny, but the settlement between them even if one has taken place, should not avail if it appears that the basis of such settlement was improper and unfair.

Appellee in her petition claims that from sales of her property, each parcel of which is described, and rents collected, and money borrowed by mortgage on her property of which he got the benefit, appellant was indebted to her on the 17th day of July 1879 when the action was commenced about the sum of $_____.

A large part of the sum so claimed to have been received by him is admitted, except a comparatively small amount, is that she was indebted to her mother, Cordelia Laird, a considerable sum with which he has undertaken to charge her in his alleged settlement with her. And if what she contends she owes her mother is added to what he has actually paid to and for her, the amount equals, and perhaps to a small extent exceeds what he admits to have collected and received of her money.

The first inquiry therefore is whether she is or was when the receipts were given June 20 and 25th, 1879, actually indebted to her mother, and if so whether he was authorized to credit himself in a settlement with appellee by what she owed her mother. If either of these questions are answered in the negative, it follows that the basis of the alleged settlement was unfair and unjust, and under the circumstances of this case appellee ought not to be concluded by such settlement, even if it was made.

Appellant contends that appellee was indebted to her mother, for board, rents collected, money loaned and paid for her furniture, etc.

But it is not necessary in determining the question of appellee's liability to appellant on account of her alleged indebtedness to her mother that these transactions should be referred to in detail.

Appellee denies that she was indebted to her mother, or ever agreed to credit appellant in any amount on that account. And the mother of both of them, Mrs. Cordelia Laird, when introduced as a witness unequivocally disclaims and denies having any demand against appellee growing out of any of the transactions referred to, her attention being called to each one of them. She also states that she never requested or authorized appellant to charge appellee with, or in any settlement to claim credit for himself on account of appellee's indebtedness to her mother.

It is true appellant files various accounts, when he has credited himself by what he claims appellee owed her mother and also files statements of accounts between himself and his mother when he charges himself with the same. But it is not shown satisfactorily that these two confiding women, one his mother and the other his sister, ever understood or agreed to such *tri parte* settlement. Mrs. Cordelia Laird not being a party to this action, but as a witness testifying that she has no demand against appellee, appellant is left entirely without right to claim for himself credit against appellee on that account.

In our opinion therefore the court below properly disallowed appellant's credit for what he claimed appellee owed their mother.

Both parties assigned numerous errors, but upon a consideration of the evidence in this case we are not satisfied that there is a material error in the amount allowed by the court below. There may be a few errors in the prejudice of each, but not of an amount that would authorize us to change the result. Though the case was referred to the Master Commissioner, no aid is afforded by his report in determining as to the justice of the various claims set up by respective parties. Besides there is not only a want of sufficient proof in support of many of the claims set up by appellant, but a question of authority on his part to make the expenditures claimed by him. But taking in consideration the relation of the parties and the necessity for many of the expenditures appellant contends he made for appellee, and on the other hand his failure to prove fully and satisfactorily in many instances when he might have done so in support of his claims against her, we think no error of any importance was made in the judgment appealed from, against either party.

Wherefore, the judgment on both the original and cross-appeal is affirmed.

Judgment *affirmed.*

*W. H. Mackoy, George McKee, J. L. Furber, for appellant.*
*Wm. Arthur, for appellee.*